# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

JEFFFERY WAYNE HAITHCOTE,    )
    )    Case No. 1:21-cv-4
    *Plaintiff*,    )
    )    Judge Travis R. McDonough
v.    )
    )    Magistrate Judge Susan K. Lee
WARDEN DARIN HUTCHINSON and    )
SGT. JERRY JOHNSON    )
    )
    *Defendant*.

---

## MEMORANDUM AND ORDER

---

Plaintiff, a prisoner of the Tennessee Department of Correction ("TDOC"), has filed a *pro se* complaint for violation of 42 U.S.C. § 1983 (Doc. 2) and a motion for leave to proceed *in forma pauperis* (Doc. 1). For the reasons set forth below, Plaintiff's motion for leave to proceed *in forma pauperis* (*Id.*) will be **GRANTED**, and this action will proceed only as to Plaintiff's Eighth Amendment claim against Defendant Sgt. Johnson for taking Plaintiff's wheelchair.

## I.    FILING FEE

As it appears from Plaintiff's motion for leave to proceed *in forma pauperis* (*Id.*) that he is unable to pay the filing fee, this motion will be **GRANTED**.

Because Plaintiff is a TDOC inmate, he will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Chattanooga, Tennessee 37402, as an initial partial payment, the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and

(B).  Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) has been paid to the Clerk.  28 U.S.C. §§ 1915(b)(2) and 1914(a).  To ensure compliance with this procedure, the Clerk will be **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, the Attorney General of the State of Tennessee, and the Court's financial deputy.  This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.        SCREENING STANDARD

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune.  *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).  The dismissal standard that the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim are insufficient to state a plausible claim for relief.  *Id.* at 681.  Likewise, an allegation that does not raise a plaintiff's right

to relief "above a speculative level" fails to state a claim upon which relief may be granted. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

## III. ANALYSIS

Plaintiff's complaint alleges (1) a claim for violation of his due process rights arising out of his six-month placement in administrative segregation without a hearing before or during that placement; and (2) a claim for violation of his rights under the Eighth Amendment arising out of Defendant Johnson and another correctional official taking a wheelchair from him. The Court will address these claims in turn.

### A. Due Process

On August 16, 2019, while Plaintiff was incarcerated in the Bledsoe Correctional Complex ("BCCX"), he got into a fight with another inmate. (Doc. 2 at 9.) Subsequently, on or about September 1, 2019, after Plaintiff pled guilty to a disciplinary infraction arising out of that fight, Defendant Warden Hutchinson placed Plaintiff in administrative segregation. (*Id.* at 6–14.) Defendant Warden Hutchinson made this placement even though Plaintiff's disciplinary infraction did not qualify him for it, and his plea agreement did not provide for it. (*Id.*)[1] Defendant Warden Hutchinson assigned Plaintiff to administrative segregation without first providing him a due

---

[1] While most of the substantive portions of Plaintiff's disciplinary report summary related to this guilty plea on the Court's docket sheet are illegible (Doc. 2 at 44–45), it legibly specifies that an "Agreement to Plead Guilty and Waiver of Disciplinary and Due Process Rights" was attached thereto (*Id.* at 45).

process hearing and did not provide Plaintiff subsequent review hearings during that placement in violation of TDOC policy 410.10 and other state laws. (*Id.* at 6–7, 9, 10, 13.) Likewise, Defendant Sgt. Johnson, the disciplinary chairman responsible for ensuring that inmates received due process hearings prior to and during placement in administrative segregation, did not provide Plaintiff with these hearings. (*Id.*)

During and after this improper placement, Plaintiff was unable to earn program and behavior credits towards his sentence. (*Id.* at 6, 16.) Plaintiff also had to meet with the parole board while subject to this incorrect classification, and this was a factor in the parole board's decision to deny him parole. (*Id.* at 6, 12, 46.) Plaintiff stayed in administrative segregation until March of 2020, when he was transferred to a different prison. (*Id.* at 13.)[2]

As noted above, Plaintiff alleges that this placement in administrative segregation violated his right to due process. (*Id.* at 6–7.) However, it is well-established that the Due Process Clause does not protect every change in a prisoner's conditions of confinement. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). Specifically, in *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Supreme Court specified that a prisoner is entitled to due process protections only where a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515

---

[2] Plaintiff also alleges that in February, presumably of 2020, a counselor and unit manager from an unspecified jail asked him if he wanted to move to "close" security from administrative segregation but actually had Plaintiff sign an agreement to join a year-long security management unit, and Plaintiff appealed that reclassification. (Doc. 2 at 13–1.) However, Plaintiff does not allege that any named Defendant was personally involved in this incident, and these allegations therefore fail to state a claim upon which relief may be granted under § 1983 as to any named Defendant. *Everson v. Leis,* 556 F.3d 484, 495 (6th Cir. 2009) (providing that § 1983 liability cannot be premised upon a theory of respondeat superior); *Frazier v. Michigan,* 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted under § 1983).

4

U.S. at 486–87. Thus, even where a state regulation contains mandatory language regarding processes, a failure to provide those processes to a prisoner will not violate the Due Process Clause unless it also inevitably affects the length of the prisoner's sentence or imposes the requisite "atypical and significant hardship." *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995) (finding that a failure to provide a prisoner with hearing prior to placing him in administrative segregation after his thirty-day punitive placement, despite mandatory language in a state regulation, did not implicate the prisoner's due process rights).

Administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467–73 (1983). As such, it only requires due process in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Courts generally consider the nature and duration of such confinement to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

Plaintiff's six-month placement in administrative segregation does not warrant due process protection. *Powell v. Washington*, 720 F. App'x 222, 226 (6th Cir. 2017) (holding that "six-month confinement in administrative segregation is insufficient to constitute an atypical and significant hardship and therefore does not implicate [] due process rights"). Further, while Plaintiff alleges that TDOC policy 404.10 created a liberty interest related to this placement that entitled him to due process hearing(s), TDOC policies and regulations do not create such liberty interests. *Taylor v. Dukes*, 25 F. App'x 423, 424 (6th Cir. 2002). Moreover, none of the Tennessee laws that Plaintiff alleges Defendant Warden Hutchinson violated (*Id.* at 6) creates any such liberty interest. Tenn. Code Ann. §§ 4-3-603, 4-3-606, 41-24-110 (all setting forth powers and/or duties of TDOC

5

Commissioners without mentioning hearings or administrative segregation); *Rimmer-Bey*, 62 F.3d at 790–91.

Also, while Plaintiff alleges that he lost his ability to earn sentencing credits during and after his placement in administrative segregation, a prisoner's inability "earn future sentence credits is not sufficient to create a constitutionally protected liberty interest." *Sotherland v. Myers*, 41 F. App'x 752, 753 (6th Cir. 2002). Likewise, Plaintiff's allegation that his improper placement was a factor in the parole board's decision to deny him parole does not create a liberty interest subject to due process consideration under Tennessee law. *Settle v. Tenn. Dep't of Corr.*, 487 F. App'x 290, 291 (6th Cir. 2012) (providing that "Tennessee law has not created a liberty interest in parole eligibility").

Further, it is apparent that the alleged taking of Plaintiff's wheelchair occurred on or about August 16, 2019, approximately two weeks before his placement in administrative segregation. (Doc. 2 at 9, 15.) Thus, it was not a condition of Plaintiff's administrative segregation placement.

Plaintiff has set forth no other "extreme circumstances" during his administrative segregation placement from which the Court can plausibly infer that it was subject to due process considerations. Accordingly, Plaintiff's complaint fails to state a due process claim upon which relief may be granted based on his administrative segregation placement, and this claim will be **DISMISSED**.

### B. Eighth Amendment Claim

Plaintiff also alleges that on or about August 16, 2019, right after the altercation that led to his placement in administrative segregation, Defendant Johnson and another correctional officer came to his holding cell and took his wheelchair, which the TDOC medical department had prescribed to him in January 2017. (*Id.* at 15.) This caused Plaintiff "major pain . . . for several

6

months" and is wearing out his left hip and knee. (*Id.*) This adequately alleges a violation of Plaintiff's Eighth Amendment rights that will proceed as to Defendant Sgt. Johnson, but not as to Defendant Warden Hutchinson, as Plaintiff has not alleged that Defendant Warden Hutchinson was personally involved in this incident. (*Id.* at 6–7, 15.) *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted under § 1983); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (providing that § 1983 liability cannot be premised upon a theory of respondeat superior).

It is worth noting that Plaintiff did not file his complaint until December 29, 2020, more than a year after this incident (*Id.* at 22), and that Tennessee has a one-year statute of limitations that applies in this action. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (federal district courts apply a state's statute of limitations to § 1983 claims); *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012) (noting that Tennessee provides one-year statute of limitations for § 1983 claims); Tenn. Code Ann. § 28-3-104(a)(1)(B) (setting forth one-year statute of limitations for § 1983 claims). However, documents filed with Plaintiff's complaint establish that Plaintiff was pursuing jail administrative remedies related to this incident until at least April 7, 2020. (*Id.* at 24.) Thus, the statute of limitations for this claim was tolled during this time. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).

The Court further notes that it is apparent from documents attached to Plaintiff's complaint that jail officials deemed the grievance that Plaintiff filed with his complaint regarding this incident inappropriate, as it addressed more than one claim and a classification matter. (*Id.* at 24–25.) Accordingly, if this is the only grievance Plaintiff filed regarding this claim, that may be grounds for dismissal of the claim. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (providing that 42 U.S.C. §

1997e(a) requires "proper exhaustion" of administrative remedies for all prisoner claims and that prisoners must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court"); *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (providing that "[t]here is no uniform federal exhaustion standard [and] [a] prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution").

Nevertheless, as any failure by Plaintiff to exhaust his administrative remedies for this claim is an affirmative defense to the claim, *Jones v. Bock*, 549 U.S. 199, 216 (2007), the Court declines to dismiss the claim on this ground at screening.

## IV.    CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 1) is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Even liberally construing the complaint in favor of Plaintiff, it fails to state a due process claim upon which relief may be granted under § 1983;

6. Accordingly, only Plaintiff's claim for violation of his Eighth Amendment rights against Defendant Sgt. Johnson will proceed herein and Defendant Warden Hutchinson is **DISMISSED**;

7. The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant Sgt. Johnson;

8. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within twenty (20) days of entry of this order;

9.  At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

10. Service on Defendant Sgt. Johnson shall be made pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4.04(1) and (10) of the Tennessee Rules of Civil Procedure, either by mail or personally if mail service is not effective;

11. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packet, this action may be dismissed;

12. Defendant Sgt. Johnson shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If he fails to timely respond to the complaint, it may result in entry of judgment by default; and

13. Plaintiff is **ORDERED** to immediately inform the Court and Defendant Sgt. Johnson or his counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

9